UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MILTON RICKS,

Plaintiff,

v.                                                    CAUSE NO. 3:25cv729 DRL-SJF

SIEMENS HEALTHCARE DIAGNOSTICS,

Defendant.

## OPINION AND ORDER

Proceeding *pro se*, Milton Ricks filed a complaint against his former employer, Siemens Healthcare Diagnostics Inc. He alleges that Siemens directed third parties to surveil and harass him. He says this conduct violated multiple federal criminal statutes. Siemens moves to dismiss all claims. The court grants the motion to dismiss.

## BACKGROUND

Interpreting the *pro se* complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and taking the allegations as true, the following facts emerge for today's purposes. Mr. Ricks was employed by Siemens as a DCA machinist from November 2015 to September 2023 [1 ¶ 6]. In May 2022, he lodged a complaint with the Equal Employment Opportunity Commission (EEOC) and a year later sued Siemens, alleging race discrimination [*id.* ¶ 7, 12]. The parties ultimately agreed to settle the lawsuit.

However, before the settlement but after Mr. Ricks filed an EEOC charge, he says he began noticing suspicious activities [1 ¶ 7]. The complaint alleges that from 2022 through 2025, Siemens used Mr. Ricks's neighbors, Hispanic males, unnamed Siemens's employees, Bank of

America employees, and other unidentified individuals as "agents" to spy on, stalk, and harass him [*id.* ¶ 14, 19-20, 30, 34, 37-41, 54-55, 58-59, 82, 84, 90-92, 112-13, 118, 121].

The complaint catalogs these events in detail, describing incidents of so-called agents breaking into his vehicles and installing devices in them to eavesdrop on his conversations, track his movements, and tamper with the vehicles' performance [*id.* ¶ 14, 18-21, 25, 54-55, 64, 74-76, 79, 82-84]. According to the complaint, these agents also installed similar devices in the vehicles of Mr. Ricks's coworker (Kristen Holt) and his mother [*id.* ¶ 78, 84]. Mr. Ricks also discovered surveillance devices in his home and the homes of others [*id.* ¶ 22, 31, 50-52, 87, 115, 120].

As alleged, agents sent emails to Mr. Ricks containing "malicious links" designed to hack his computer to gather evidence of his pending civil lawsuit against Siemens [*id.* ¶ 29-30]. Mr. Ricks claims agents then his cellphone, internet cable modem, computers, and other electronic devices [*id.* ¶ 41, 72, 119]. Once the agents gained access to his modem, they began to intercept his mail and implant chips into electronic devices he purchased online [*id.* ¶ 63, 65, 67-72, 116]. Mr. Ricks alleges that the agents also used stingray devices to intercept his phone calls to his father and credit loaners and attempted to impersonate these individuals during the calls [*id.* ¶ 34-48, 88]. In another instance, the complaint alleges that Siemens was responsible for Bank of America employees placing a $2,500 levy on Mr. Ricks's bank account [*id.* ¶ 98-103, 113].

Taken together, these allegations form the basis of eight counts brought against Siemens. Each count invokes a different federal criminal statute and asserts multiple claims. Siemens moved to dismiss all claims with prejudice.[1] Mr. Ricks objected to dismissal, Siemens then replied, and Mr. Ricks filed a surreply. The court will not consider any surreply, unauthorized by this

---

[1] In support of one of its arguments, Siemens filed under seal a 2024 settlement agreement for Mr. Ricks's 2023 lawsuit against Siemens.

district's rules, when Siemens raised no new issues in reply and when Mr. Ricks had a full and fair opportunity to respond to the motion to dismiss already. *See Meraz-Camacho v. United States*, 417 F. Appx. 558, 559 (7th Cir. 2011) ("The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief."). The motion to dismiss is ripe for decision.

STANDARD

A Rule 12(b)(1) motion "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). When evaluating a facial challenge to subject matter jurisdiction, the court must accept alleged factual matters as true and draw all reasonable inferences in favor of the plaintiff. *See id.*; *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). On the other hand, a plaintiff facing a factual attack doesn't enjoy the treatment of his allegations as true. *See Bazile*, 983 F.3d at 279. In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Id.* The plaintiff bears the burden of establishing the jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). Siemens in part advances a facial attack here.

In reviewing a Rule 12(b)(6) motion, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not

probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

Siemens divides the various counts in two separate categories: those that rely on a statute with a private cause of action and those that do not. Those that do not must be dismissed as a matter of law, Siemens argues. For those that permit a private right of action, Siemens offers other reasons for dismissal.

A.  *Counts 1, 4, 6-8.*

In count 1, Mr. Ricks alleges that Siemens violated 18 U.S.C. § 1341 (Mail Fraud Act) by influencing employees of Bank of America to swindle him out of $2,500. For count 4, Mr. Ricks claims that Siemens violated 18 U.S.C. § 3121 (the Pen Register Act) by installing devices in his, his coworker's, and his mother's homes to gain information about their cellular and signal data. For count 6, the complaint alleges that Siemens violated 18 U.S.C. § 1801 (video voyeurism) by gaining access to his closed-circuit television surveillance systems and their cameras. In count 7, Mr. Ricks claims that Siemens violated 18 U.S.C. § 1029 (fraud and related activity with access devices) by hacking into his and his mother's internet cable modem and gaining access to their computers and his cellphone. Count 8 states that Siemens intercepted and compromised Mr. Ricks's and his mother's mail in violation of 18 U.S.C. § 1701 (obstruction of mail).

Siemens moves to dismiss these counts as a matter of law because Mr. Ricks cannot pursue a private right of action under these criminal statutes. Rather than argue otherwise, Mr. Ricks

asks the court to construe his pleadings liberally to state other common law torts or constitutional violations actionable under 42 U.S.C. § 1983 or § 1985(3).

As a general rule, private individuals have no right to commence prosecutions or enforce criminal statutes against others, unless the statute explicitly provides a civil remedy. *Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991) (Posner, J., concurring). Without an express civil remedy, the law is reluctant to interpret criminal statutes as implying one. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). "Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are [] poor candidates for the imputation of private rights of action." *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999).

The court agrees with Siemens that these criminal statutes do not provide Mr. Ricks a private right of action, explicitly or implicitly. Other courts who have considered the issue have reached the same conclusion. *See, e.g., McGee v. Nissan Motor Acceptance Corp.*, 619 F. Appx. 555, 555 (7th Cir. 2015) (18 U.S.C. § 1341); *Whitney v. United States Postal Serv.*, 1996 U.S. App. LEXIS 13585, 2-3 (2d Cir. June 7, 1996) (18 U.S.C. § 1701); *Parker v. Mich. Dep't of Corr.*, 2025 U.S. Dist. LEXIS 48089, 4 (E.D. Mich. Mar. 17, 2025) (18 U.S.C. § 1801); *Wallace v. Cellco P'ship*, 2015 U.S. Dist. LEXIS 201117, 18 (C.D. Cal. Feb. 9, 2015) (18 U.S.C. § 3121); *Dunahoo v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 7717, 15 (S.D.N.Y. Jan. 20, 2012) (18 U.S.C. § 1029).

In addition, these counts fail to state plausible claims under 42 U.S.C. § 1983 or § 1985(3). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 is inapplicable because the complaint doesn't allege that Siemens or any individual was acting under color of state law. *See Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023).

"Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law" where the conspiracy is "motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Thus, for § 1985(3) to be a viable vehicle, Mr. Ricks had to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind" Siemens's action. *Kowalski v. Boliker*, 893 F.3d 987, 1001 (7th Cir. 2018) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Mr. Ricks hasn't done so here, so he hasn't stated a claim under § 1985(3) either.

The criminal statutes invoked in counts 1, 4, and 6-8 do not provide a basis for civil liability and the allegations, even liberally construed, do not state any plausible claims. For these reasons, the court must dismiss these claims.

B. *Counts 2, 3, and 5.*

Siemens accepts that the remaining counts in the complaint invoke criminal statutes that provide Mr. Ricks a private right of action. In count 2, Mr. Ricks alleges Siemens violated the Computer Fraud and Abuse Act (CFAA), *see* 18 U.S.C. § 1030, by using agents to hack computers inside his, his mother's, and his coworker's vehicles, his and his mother's personal computers, and his and his mother's cable modem. Count 3 alleges that Siemens violated the Stored Communications Act (SCA), *see* 18 U.S.C. 2701, by employing agents to send Mr. Ricks emails with malicious links and using other devices to gain access to information stored on his cellphones, personal computer, and his vehicles. He also claims that Siemens's agents used devices to gain access to data stored on his mother's and coworker's vehicles, and his mother's

6

cellphone and computers. For count 5, Mr. Ricks says Siemens violated the Federal Wiretap Act, *see* 18 U.S.C. § 2511, by using stingray devices to intercept his phone calls.

Siemens presents several arguments why these claims should be dismissed. First, it contends Mr. Ricks doesn't have standing to assert claims on behalf of his mother or his coworker. Second, Siemens argues that Mr. Ricks hasn't alleged plausible facts to show how the company is responsible for the unlawful actions of others. Third, Siemens argues that some claims are barred by claim preclusion or the terms of the parties' 2024 settlement agreement. The company advances other arguments, but these address the remaining claims.

      1.  *Standing.*

Siemens contends that Mr. Ricks doesn't have standing to bring claims on behalf of his mother and coworker. Although Siemens doesn't cite to a rule, its request to dismiss claims for lack of Article III standing is properly analyzed under Rule 12(b)(1), *see Bazile*, 983 F.3d at 279, whereas a dismissal for prudential standing would fall under Rule 12(b)(6), *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) (prudential standing is not jurisdictional). Mr. Ricks doesn't address this standing argument in his response. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995) (*pro se* litigants "are in general subject to the same waiver rules that apply to parties who are represented by counsel").

The United States Constitution confines the federal judiciary's power to "Cases" and "Controversies." U.S. Const. art. III § 2. For a case or controversy to exist, a plaintiff must have standing—an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 949 (7th Cir. 2005). Mr. Ricks must point to his "concrete" injury that "actually exist[s]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). He cannot merely point to a

third-party's injury and claim it as his own to establish standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013). "The [Article] III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). He "must demonstrate standing for each claim that he presses and for each form of relief that he seeks." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (cleaned up).

In addition to constitutional standing, courts consider prudential standing as a limit on the court's power to hear a case. *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). This form of standing arises not from the Constitution, but from prudential limitations. *Rawoof*, 521 F.3d at 756-57; *see generally Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 196-97 (2017) (distinguishing between the two standing doctrines). "One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties." *Rawoof*, 521 F.3d at 757; *see also* Fed. R. Civ. P. 17(a)(1) ("action must be prosecuted in the name of the real party in interest").

Mr. Ricks cannot establish constitutional or prudential standing to sue on behalf of his mother and coworker. For one, any alleged harm that these individuals experienced has not been shown to be his injury, nor one the court's ruling might redress, so the court lacks jurisdiction to the extent he asserts their claims as his claims. *See TransUnion*, 594 U.S. at 431. For a prudential reason, he likewise hasn't demonstrated a basis to enforce the rights of others. Accordingly, the claims asserted on behalf of Mr. Ricks's mother and neighbor must be dismissed, albeit without prejudice given dismissals for lack of jurisdiction must occur that way.

2.  *Failure to State a Claim.*

For the claims in these counts personal to Mr. Ricks, Siemens argues that the complaint relies solely on legal conclusions and speculation to show the company is responsible for the unlawful acts of others. Mr. Ricks never really grapples with this argument. Instead, he says the complaint provides sufficient information to show that Siemens is responsible for unauthorized access to his computer and that he doesn't need to prove at this stage whether Siemens "used agents or electronic devices to intercept" his phone calls. In reply, Siemens argues that Mr. Ricks hasn't established a plausible connection between the unnamed wrongdoers and the company.

To survive a motion to dismiss, Mr. Ricks must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. He hasn't done so here. Throughout his complaint, Mr. Ricks labels various unknown and unnamed individuals as Siemens's "agents"—to include his neighbors, Hispanic males who lived nearby or passed him in a retail store, unidentified employees of Siemens, people who worked at Bank of America, and others. He alleges that these individuals gained unauthorized access to his computers and electronic devices in violation of the CFAA, violated the SCA by accessing data stored on various electronic devices, and intercepted his phone calls in violation of the Federal Wiretap Act.

Missing in all 122 paragraphs of his complaint are plausible allegations showing that any wrongful act could be attributable to Siemens. To be sure, the complaint calls these individuals Siemens's "agents," but that merely presents as a conclusion that the court need not accept without some facts that would make it plausible. *Twombly*, 550 U.S. at 555. Even referring to employees generally, who in the scope and course of their employment with Siemens could be fairly called agents, fails to draw a plausible link as to how they had an agency relationship with

the company when these actors allegedly committed any wrongful act outside work. *See, e.g., Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020). Indeed, in the whole, the complaint strikes as fantastical rather than plausible. Merely concluding in the complaint that Siemens was responsible for orchestrating these alleged acts by a variety of unknown individuals falls short of surviving a motion to dismiss. *See Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

The most the complaint offers about any one of these so-called agents is an interaction between Mr. Ricks and an unnamed neighbor. As alleged, this neighbor admitted to spying on him, felt guilty about it, and told Mr. Ricks he would no longer spy for the "powers to be." Even applying a liberal reading of the complaint, nothing plausibly means this was Siemens. And this alleged interaction with his neighbor doesn't establish that Siemens was responsible for organizing a deeper network of agents to take up a complex, years-long operation to surveil and harass him. Similarly, general allusions that Siemens had a motive to do harm to him because he sued them in 2022 (a case since settled) doesn't fill the gap. These allegations remain entirely speculative, not plausible. Accordingly, the complaint fails to state a claim against Siemens in counts 2, 3, and 5 by failing to connect Siemens to the actions of others.

3.   *Settlement Agreement.*

Siemens argues that a previous settlement agreement bars any claims that arose before May 2, 2024 because Mr. Ricks agreed to their release. The company vacillates between enforcement of the release in the settlement agreement and the doctrine of claim preclusion. The court addresses only the release because Siemens has not established why today's dispute arises from the same transaction as his prior employment with the company to call for claim preclusion (just as Mr. Ricks advocates). Mr. Ricks offers no contest to the release, however. Instead, he contends that his claims rely on wrongdoing that occurred after the settlement.

"A settlement agreement is merely a contract between the parties to the litigation." *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Like all contracts, "the formation, construction, and enforceability of a settlement agreement is governed by local contract law." *Id.* Indiana courts regularly uphold release agreements, presuming they represent the freely bargained agreement of the parties. *McAdams v. Foxcliff Estates Cmty. Ass'n*, 92 N.E.3d 1144, 1150 (Ind. Ct. App. 2018). "[U]pholding releases serves an important public policy because it facilitates the orderly settlement of disputes." *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003).

The parties settled a prior employment dispute in federal court. Their settlement agreement became effective May 2, 2024. In addition to releasing all claims related to his former employment, Mr. Ricks agreed to "voluntarily and knowingly release[] [Siemens and many affiliated representatives as Released Parties] completely and forever, from any and all [c]laims, causes of action, suits, contracts, promises, or demands of any kind, which he may now have, whether known or unknown, intentional or otherwise, before the Effective Date of this Agreement [], to the maximum extent waivable by law, for any action or omission by the Released Parties, and/or due to any matter whatsoever relating to . . . any of the Released Parties[.]"

Only to the extent the court, on a motion to dismiss under Rule 12(b)(6), could consider this settlement agreement would it be able to say Mr. Ricks released any claims arising before May 2, 2024 related to Siemens or its agents and employees. *See Perfect v. McAndrew*, 798 N.E.2d 470, 479 (Ind. Ct. App. 2003) ("Unambiguous contracts must be specifically enforced as written without any additions or deletions by the court."). But Siemens never explains why the court might consider this agreement at this stage when it exists outside the complaint.

In response to a Rule 12(b)(6) motion to dismiss, the court often looks only to the allegations in the operative pleading to determine whether they pass muster, without considering

extraneous documents or evidence, else the rules require that the motion "be treated as one for summary judgment." Fed. R. Civ. P. 12(d). As exceptions, the court may consider the complaint's attachments, documents incorporated by reference in that pleading, and judicially noticeable facts. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The court can take judicial notice that a settlement occurred, as that was part of the prior federal case, but it cannot take judicial notice of the settlement agreement's terms, as they were not part of the public record. *See Gen Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *see also* Fed. R. Evid. 201(b). Siemens has not pointed to anything in the complaint that incorporates or references the settlement agreement or its terms to excuse this rule.

Though the court could convert this motion to one for summary judgment and give Mr. Ricks notice of this election so he could respond, the court chooses not to do so. Instead, the court alerts Mr. Ricks of this issue because it may impact his ability to file an amended complaint, which the court addresses next.

C. *Amending the Complaint.*

Siemens argues that this complaint should be dismissed with prejudice because no additional facts would provide him a cause of action or satisfy pleading requirements. Mr. Ricks disagrees and asks the court for leave to file an amended complaint to cure its deficiencies, citing the liberal standard afforded to *pro se* litigants to do so. In reply, Siemens points out that Mr. Ricks hasn't explained how he would amend his complaint to fix any deficiency.

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). "Unless it is *certain* from the face of the complaint that any amendment

would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). "When the party is *pro se*, the liberal approach to amending pleadings applies with even more force." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018).

When a complaint is mired in conspiratorial speculations and conjectures, as is true here, pleadings "must meet a high standard of plausibility," *Cooney*, 583 F.3d at 970—that same "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. Any amendment that would try to resurrect the claims in counts 1, 4, and 6-8 would be futile, for there is no private right of action. Any amendment that would endeavor to assert claims for harms to Mr. Ricks's mother or coworker would likely prove futile too, though, without jurisdiction, the court must dismiss such claims without prejudice by definition. Unknown or unidentified neighbors or just random people who have no plausible connection to Siemens would not support any claim either. Any amendment that would endeavor to assert claims based on conduct that occurred by Siemens or its employees or agents before May 2, 2024 might likely be unsuccessful, though that issue would need to be decided at some future point.

Although this complaint often strikes as fantastical, Mr. Ricks alludes to company employees taking certain actions against him in counts 2, 3, and 5, and perhaps some after May 2, 2024. Often a person will be responsible for his or her own tort or wrongful action, so the court might doubt an ability to allege a plausible link between any individual actor and Siemens, but the court cannot say this would be futile. In addition, Mr. Ricks alludes (albeit in one sentence) that he might have claims for fraud or invasion of privacy under state law tort theories. The court sees no basis for a fraud claim here, and such a claim would need to be pleaded with particularity

anyway, and that has not happened on this pleading. Whether Mr. Ricks could assert a state law claim for invasion of privacy, though, no one addresses in any developed way—neither Mr. Ricks nor Siemens. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001). It seems tenuous, not least when Siemens cannot be held responsible for someone else's tort without a plausible basis to do so. But without any remaining federal claims or diversity jurisdiction, and so long as the basis for barring an Indiana tort claim is not altogether clear, the court would have to dismiss such a state law claim without prejudice to allow him to pursue it in state court.[2]

These questions illustrate why the court cannot dismiss this complaint in its entirety with prejudice. Heeding the admonition that it should give *pro se* litigants, like Mr. Ricks, a chance to amend their complaint before dismissing it with prejudice, the court cannot say he has no information that might identify any Siemens employee, allege what he or she did, when that happened, or otherwise allege how his or her conduct was plausibly attributable to Siemens. The court will afford leave to amend only so long as Mr. Ricks believes he can allege a plausible claim consistent with this opinion.

CONCLUSION

Accordingly, the court GRANTS the motion to dismiss without prejudice [9], STRIKES the unauthorized surreply, though it will remain on the docket as part of the record [19], GRANTS the motion to seal [12], DENIES the motion for oral argument [13], and GRANTS Mr. Ricks until March 24, 2026 to file an amended complaint, albeit consistent with this opinion.

SO ORDERED.

March 3, 2026                                    *s/ Damon R. Leichty*
                                                Judge, United States District Court

---

[2] The complaint has not properly pleaded diversity jurisdiction, and the necessary information is not otherwise in the record.